(No. 37729.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES JONES, Plaintiff in Error.

*Opinion filed September 29, 1964.*

JULIUS Y. YACKER, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. MARTIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

James Jones was tried by jury in the criminal court of Cook County where he was found guilty of the unlawful sale of narcotics, and sentenced to the penitentiary for a term of not less than ten years nor more than life imprisonment. A constitutional issue is presented and the case is properly before us for review.

The issue is the validity of a search made at the time of arrest without a warrant. The proof at the hearing on a motion to suppress the evidence obtained as a result of that search was substantially as follows: An informer, who was a narcotics addict, told a police officer that she could make a purchase of narcotics from a man called "Jimmy" at a certain address. The informer was searched by police matrons who found no money or narcotics on her person, and she was then given some money with which to make the purchase. The officers recorded the serial numbers of the currency and marked two coins. Police officers then drove with the informer to the vicinity of the address furnished

by her and parked in a position where they could observe the entrance to the apartment building. Before the informer entered the building the officers asked her to lay a matchbox outside the door when she had completed the purchase and had left the apartment. About 10 minutes later the informer came out of the building and handed one of the officers 3 capsules. The officer field tested the substance in the capsules and found it to be a derivative of opium. The informer told the officers that she had purchased the capsules from "Jimmy," using the marked money, and described him to the officers who proceeded to the third floor of the building where they found a matchbox outside the door of one of the apartments. They knocked on the door and announced that they were police officers. They heard the sound of a man running inside the apartment and immediately opened the door and saw the defendant throw two quarters on the floor. One of the officers picked up the coins and discovered that they were the same coins which he had previously marked and given to the informer and the defendant was then placed under arrest. Another officer searched the defendant and found an envelope in his pocket containing 53 capsules of narcotics. A search was made of the apartment and the four $1 bills which had been given to the informer were found in the kitchen behind the stove. The officers did not have a warrant for the defendant's arrest nor a search warrant.

The main argument advanced in support of the defendant's claim that the search and seizure were improper is that the officers should have obtained a warrant for the defendant's arrest or a search warrant. The defendant argues that in the absence of an emergency which renders it impractical for an officer to obtain a search warrant, a search without a warrant is not justified. The argument of the defendant finds support in certain opinions of the United States Supreme Court. (*McDonald* v. *United States,* 335 U.S. 451, 69 S. Ct. 191, 93 L. ed. 153; *Johnson* v. *United*

*States,* 333 U.S. 10, 68 S. Ct. 367, 92 L. ed. 436; *Trupiano* v. *United States,* 334 U.S. 699, 68 S. Ct. 1229, 92 L. ed. 1663.) However, these cases were decided prior to the opinion in *United States* v. *Rabinowitz,* 339 U.S. 56, 70 S. Ct. 430, 94 L. ed. 653. In that case the court said (p. 66) : "To the extent that *Trupiano* v. *United States,* 334 U.S. 699, 92 L. ed. 1663, 68 S. Ct. 1229, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment." In *Ker* v. *California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. ed. 2d 726, the court cited *Rabinowitz* with approval and noted that the practicability of obtaining a warrant is not the controlling factor when a search is sought to be justified as incident to arrest. (374 U.S. 41.) In *People* v. *DiGerlando,* 30 Ill.2d 544, we recently recognized the continuing validity of the doctrine established in *Rabinowitz.*

The test, therefore, is not whether it was reasonable or practicable for the officers to obtain a search warrant, but whether the search was unreasonable. It is well established that a search without a warrant is reasonable and valid if it is incident to a lawful arrest and there is no requirement that the arrest be under the authority of an arrest warrant. (*Ker* v. *California,* 374 U.S. 23, 41, 83 S. Ct. 1623, 10 L. ed. 2d 726.) In turn, the validity of an arrest without a warrant depends upon whether the officers had reasonable cause to believe that an offense had been committed and that the defendant had committed it. (*People* v. *Jones,* 16 Ill.2d 569, 573.) The test is not whether there is sufficient evi-

dence to convict the arrested person, but probable cause exists for arrest where a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense. (*People* v. *Hightower,* 20 Ill.2d 361, 366.) In deciding the question in a particular case, courts deal with probabilities and are not disposed to be unduly technical. (*People* v. *Fiorito,* 19 Ill.2d 246, 256.) When the facts in the present case are considered in this light, we believe that it is clear that the officers had reasonable cause to believe that the defendant had committed the crime of unlawfully selling narcotic drugs. They had observed the informer enter the building, had seen her emerge with capsules which the field test showed contained narcotics, and the door of the defendant's apartment was marked by a matchbox as requested by the officers. Defendant contends that our decision in *People* v. *Parren,* 24 Ill.2d 572, requires a contrary conclusion. A similar contention was advanced by the defendant in *People* v. *Redding,* 28 Ill.2d 305, which, like the present case, involved a controlled purchase of narcotics by an informer. In that case, we pointed out that in *Parren,* the information given to the officers was supplied by an anonymous informer and we pointed out that where there was a carefully controlled purchase of narcotics through an informer it would be idle to say that reasonable men would not have acted similarly upon the information available to them.

In further support of the defendant's argument that the arrest and the accompanying search were invalid, it is argued that there is no evidence that a crime had in fact been committed. This argument is based upon the fact that the officers did not explain what is meant by a "field test", and it is argued that in the absence of any testimony defining such a test there was no evidence before the court at the hearing on the motion to suppress from which the court could have determined that the officers had reasonable

ground to believe that a crime had been committed. Defendant's argument cannot be sustained. In *People* v. *Boozer,* 12 Ill.2d 184, no field test was performed and the officers made the arrest on the informer's signal as he emerged from the defendant's home. We rejected the suggestion that a field test should have been made and held that the law does not impose such precise exactions. This holding was recently reaffirmed in *People* v. *Redding,* 28 Ill.2d 305, 308. If no field test is necessary to establish reasonable cause, the fact that a field test was made but not explained in detail by the officer does not establish a lack of reasonable cause.

We therefore hold that the arrest of the defendant without a warrant was lawful and that the search of his person and the apartment, which immediately followed the arrest, was likewise lawful. In so holding we are not unmindful of the decision of the United States Supreme Court in *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. ed. 2d 1081, holding that the constitutional prohibition of the fourth amendment to the United States constitution is enforcible against the States through the fourteenth amendment and holding that evidence obtained in an unlawful search must be excluded. Long prior to the *Mapp* decision we had adopted the exclusionary rule holding that evidence obtained in an illegal search was not admissible at the trial. (See *People* v. *Williams,* 27 Ill.2d 542, 544.) We have also considered *Ker* v. *California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. ed. 2d 726, holding that the reasonableness of a search, while initially a matter to be determined by a State court under State law, must ultimately be tested by the "fundamental criteria" laid down by the fourth amendment and in opinions of the United States Supreme Court applying that amendment. We are satisfied that when tested by the Federal constitutional standards as laid down by the United States Supreme Court, the arrest and search in the present case were lawful.

There are no other questions argued on this writ of

error and since we hold that the search was lawful and the evidence was properly admitted, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*