**People of the State of Illinois, Defendant in Error, v. Carlos Garcia, Plaintiff in Error.**

Gen. No. 49,530.

First District, Third Division.

October 22, 1964.

George E. Batten, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

A writ of error was issued by the Supreme Court to review a judgment of the criminal court of Cook County entered on a jury verdict finding the defendant, Carlos Garcia, guilty of possession of narcotics in violation of the Uniform Narcotics Drug Act of the state of Illinois (Ill Rev Stats 1961, c 38, §§ 192.-28–1 to 192.28–44), and sentencing him to not less

than four years nor more than eight years in the Illinois Penitentiary. The case is before us having been transferred from the Supreme Court.

Defendant argues (1) that the State failed to prove its case beyond a reasonable doubt; (2) that the State failed to prove beyond a reasonable doubt that the substance confiscated by the police was in fact a narcotic drug, and (3) that the State failed to prove beyond a reasonable doubt that the alleged narcotics were in the possession of the defendant.

The first State's witness, Robert Lopez, a Chicago police officer, testified in substance as follows: On June 29, 1961, he and his partner, Officer Fred Montejano, went with a search warrant to the Jet Hotel at 662 North Clark Street in the city of Chicago and proceeded to apartment number 39. They knocked on the door, and a male voice answered, "Who is it?" They responded, "Police officers, we have a search warrant for the apartment. Open up the door." They waited for approximately one minute, and, as there was no further response, they forced the door open. In the room were the defendant and one Marlene Miller who was in bed clad in pajamas. An argument ensued between the defendant and Officer Lopez over the officers' right to enter the apartment, and, as Officer Lopez was attempting to read the search warrant to the defendant, defendant snatched the warrant from his hands. A struggle ensued and Officer Montejano helped Officer Lopez subdue the defendant. Officer Lopez then searched the defendant and found ten foil-covered packages containing a white powder in the lefthand trouser pocket of the defendant's pants. He asked the defendant what the packages were, and the defendant stated that it was heroin, and it was for his own use. Officer Lopez then performed a field test on the contents of one of the packages. A field test consists of

putting the suspected narcotics into a glass vial which contains a white chemical. If there is a purplish reaction, that is called a positive reaction, and it proves that the substance tested is a derivative of opium. He got a positive reaction from the contents of the foil package tested. The two officers subsequently made a thorough search of the apartment which failed to turn up additional evidence. Officer Montejano took Miss Miller to her room to get dressed while defendant and Officer Lopez waited in the hallway. Then both Miss Miller and the defendant were taken to the Narcotics Bureau. They made another raid in the Jet Hotel on the same day and recovered a quantity of marijuana from the apartment of a man named Cerano.

Officer Montejano was called as a witness for the State, and his testimony corroborated that of Officer Lopez. He also testified that the raid on Cerano's apartment was not conducted at the same time as the raid on defendant's apartment.

The parties entered into a stipulation that if Mr. Charles Vondrak were called to testify, he would testify that he is a qualified chemist employed by the Chicago Police Department Crime Detection Laboratory. That on June 29, 1961, Officer Lopez submitted to him ten foil-covered packages containing a quantity of unknown white powder. That the contents of two of these packages were tested, one package containing .07 grams, another package containing .06 grams. That these two packages were subjected to various chemical identity tests, and the results were as follows: That both packages contained diacetylmorphine hydrochloride, commonly referred to as heroin.

The defendant then was called and testified to the following in his own behalf. On June 29, 1961 he was in his room with one Marlene Miller. He heard

a knock on the door. He asked who was there, but there was no response. He ran to the door, but before he could open it, the door was forced open by two men, Officers Lopez and Montejano. The officers held their guns in his face and when he asked who they were, Officer Lopez said, "Never mind who we are." Officer Lopez then frisked the defendant and asked him where the gun was. When the defendant said, "What Gun?" Officer Lopez hit him on the left side of his face and threatened to kill him if he didn't tell him where the gun was. When defendant responded, "How could I? I don't have a gun," Officer Lopez hit him in the stomach and he fell to the floor. When he started to get up, Officer Lopez told him to stay where he was. Officer Montejano also told him to remain on the floor and emphasized his command with a kick in the groin. The two officers then searched the room and found nothing. Officer Lopez then repeated his threat to kill the defendant if he didn't tell him where the gun was. When defendant again insisted that he had no gun, Officer Lopez said, "Take this woman out of here and come back. We are going to work him over." Officer Montejano left with Miss Miller and returned in a few minutes. While Officer Montejano held the defendant, Officer Lopez again searched the apartment. He found some pills in Miss Miller's purse, and, when the defendant denied any knowledge of them, he had Officer Montejano bring Miss Miller back into the room. Miss Miller admitted that the pills belonged to her, and Officer Montejano again took her from the room. When Officer Montejano returned, the two police officers took the defendant to room 35, which was the room which Miss Miller shared with a girl identified by the defendant as Pat. The officers kicked in the door. Pat and an unidentified man were in the room. The officers searched the

apartment and then Officer Lopez took the defendant back to his own room and told him he was under arrest in connection with a complaint about a gun. He told the defendant that he had a deal for him and when defendant asked him what kind of a deal, he answered, "If you tell me where the gun is, who got some narcotics around here, I won't bother you." He again threatened to kill the defendant if he didn't tell him where the gun was, and said, "I am going to make sure. I am going to put you away for a long time." He then stuck his gun in defendant's neck and kneed him in the testicles. An argument ensued about defendant's rights after which Officer Lopez told the defendant to get dressed. He then took him to room 24, the apartment of a man named Cerano. Cerano and his brother and a girl friend of the brother were present in the room. Defendant was then taken to the police station at 11th and State Streets. On cross-examination, defendant denied that the police officers found any foil-covered packages on his person, or that he ever made any admissions about possessing heroin for his own use. He also denied that any field test was conducted by Officer Lopez at the time of his arrest. Defendant was the only witness who testified in his behalf.

The police officers were called in rebuttal by the State and denied ever having struck the defendant, and denied threatening him in any way. In substance, they denied the story given by the defendant.

In support of his first contention, that the State failed to prove its case beyond a reasonable doubt, defendant cites People v. Boyd, 17 Ill2d 321, 161 NE 2d 311, and People v. Magnafichi, 9 Ill2d 169, 137 NE2d 256.

The Magnafichi case is relied upon for the proposition that mere presence at the scene of a crime is insufficient to establish guilt. In the present case the

testimony of the police officers, if believed, established more than mere presence of the defendant at the scene of the crime. A search of defendant's person revealed the presence of ten foil-covered packages which were subsequently proven to contain narcotics.

People v. Boyd, 17 Ill2d 321, 161 NE2d 311, is similarly of no help to the defendant. Defendant quotes from the opinion of the court where it said on page 327:

> "The burden was upon the State to establish the guilt of defendant beyond a reasonable doubt and if it intended to obtain a conviction by the process of elimination by showing that no one else but defendant could have been guilty, the burden was upon it to show that there was no one else in the other room. The mere fact that defendant did not introduce any testimony that there were others present does not aid the State in its case."

The State here was not trying to convict defendant by a process of elimination. As has been stated, testimony was adduced from two police officers to the effect that narcotics were found on defendant's person.

■ ■ Defendant's second contention, that the State failed to prove beyond a reasonable doubt that the substance confiscated was in fact a narcotic drug, is similarly without merit. The two police officers testified that Officer Lopez conducted a field test of the suspect substance at the scene, and that he got a positive reaction. If believed, this testimony by itself was sufficient to establish that the substance was a narcotic drug. People v. Clark, 7 Ill2d 163, 171, 130 NE2d 195. Although defendant denied that a field test was conducted, and, although his version

of the arrest differs in many material respects from that testified to by the arresting officers, the jury heard and observed the witnesses and it was the jury's province to determine their credibility, to accept what testimony they believed and to reject what they did not believe. People v. Costello, 320 Ill 79, 150 NE 712. Obviously they chose to accept the testimony of the police officers.

Additionally, each of the arresting officers testified that the defendant, having been relieved of the ten packets, described the contents as heroin and admitted further that the heroin was for his own use. These admissions, added to the testimony regarding the results of the field test were clearly sufficient to enable the jury to find that the substance confiscated was in fact a narcotic drug.

■ Defendant argues that there was no showing that the percentage of heroin in the substance confiscated was more than the usual dose for such narcotic when used medically as an analgesic. The statute makes no exception for possession of a narcotic used as an analgesic. The only lawful heroin possessors are statutorily defined, and defendant has failed to bring himself within this group.

As to defendant's last contention, since there was testimony that the drugs were taken from the person of the defendant, it can hardly be said that there was anything lacking in the State's proof of actual possession.

The judgment of the criminal court of Cook County is affirmed.

Affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.