THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM HILL *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 86—3132, 86—3133, 86—3235 cons.

Opinion filed May 2, 1988.—Rehearing denied June 14, 1988.—Modified opinion filed June 20, 1988.

Joseph A. Ettinger and Rick M. Shoenfield, both of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, Kim A. Novi, and LaCoulton Walls, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from the denial of a motion to suppress evidence and from convictions following a bench trial for possession with intent to distribute more than 30 grams of a controlled substance. Defendants raise the following issues on appeal: (1) whether they were subjected to an illegal search of their hotel room; (2) whether the warrantless entry was justified by exigent circumstances; (3) whether there was probable cause for the warrantless entry; (4) whether the

testing method used by the State chemist proved beyond a reasonable doubt that the powder seized was a controlled substance; (5) whether defendant Williams was proved guilty beyond a reasonable doubt of constructive possession of a controlled substance; (6) whether defendants were proved guilty beyond a reasonable doubt of possessing a Class X amount of a controlled substance; and (7) whether defendant Hill improperly received a disparate sentence.

Defendants William Hill, Marvin August and Derrick Williams were charged in a two-count complaint with one count of possession of a controlled substance with intent to deliver more than 30 grams of a substance containing cocaine and one count of possession with intent to deliver more than 15 grams of a substance containing heroin. Defendants were found guilty on both counts but judgment was entered only on the count alleging possession of more than 30 grams of cocaine.

Prior to trial, defendants moved to suppress the cocaine, the heroin, a handgun and paraphernalia seized from their motel room. At the suppression hearing, undercover police officer Mary Hodge and defendant Marvin August testified that the following events occurred.

On October 3, 1983, defendant August rented a room at the Roberts Motel located at 3735 South Michigan Avenue. The room was occupied for three days before the arrest; however, the parties disagree as to whether defendants Hill and Williams were in the room for an extended period of time or whether they arrived shortly before the police arrived.

On October 5, 1983, at approximately 12:30 in the afternoon, undercover narcotics officer Mary Hodge went to the room posing as a maid. She knocked on the door and asked if the defendants needed the linen changed. Defendant Williams opened the door and requested clean towels but did not let Hodge into the room to change the linens. Officer Hodge then went to room 216 of the motel to confer with several other surveillance officers. She attached an agent alert beeper to her body and returned to defendants' room with clean towels.

Defendant Williams again answered the door and spoke with Officer Hodge. While standing outside the room, she observed defendant Hill sitting at a desk mixing or separating a large amount of white powder. She also saw a triple beam scale and numerous small packets on the desk. Defendant August was sitting on the bed. Officer Hodge tripped the agent alert button and the other surveillance officers arrived and arrested the defendants. Officer Posilovich, one of the arresting officers, testified that the following items were seized: 34.5 grams of cocaine, 17 grams of heroin, a triple beam scale, two playing

cards cut at the corners, a .38 caliber handgun and cartridges, a food mixer caked with white powder, hand sifters, a set of measuring spoons, an assortment of plastic bags, an iron, test tubes and $7,000.

At the suppression hearing, defendants argued that the warrantless search and arrest was not supported by probable cause or exigent circumstances. They also argued that Officer Hodge's use of subterfuge to gain entry to their motel room constituted an invasion of their right to privacy.

The trial court denied the motion to suppress, finding that probable cause existed when Officer Hodge observed the powder, scale and other items in the room and that exigent circumstances existed in that if the officers had delayed their search in order to obtain a warrant, there was a strong likelihood that defendants and the contraband would have been gone. The trial court also found that the defendants' reasonable expectation of privacy under the fourth amendment did not extend to common areas surrounding the motel room.

At trial, the State introduced the testimony of Officers Hodge and Posilovich and Jean Dietrich, a forensic chemist from the crime laboratory of the Chicago police department. Officer Hodge's testimony was similar to her testimony at the suppression hearing. Officer Posilovich made an in-court identification of the defendants and the items seized from the motel room.

Jean Dietrich testified that she initially performed tests on the seized substances on November 8, 1983. The weight of the white powder in State's exhibit 28P was 21.3 grams. She also performed color tests and a crystal test on the substance, both of which are preliminary screening tests to determine whether there is a likelihood that the powder contains a controlled substance. She then tested the powder with an ultraviolet spectrophotometer (UV). The UV test generates a graph of the unknown sample which is then compared to a graph from a known sample of the drug. Ms. Dietrich testified that the UV graph from State's exhibit 28P matched a known cocaine UV graph and that she believed to a reasonable degree of scientific certainty that the substance in the exhibit contained cocaine.

She also performed color and crystal tests on powder weighing 0.34 grams from 1 to 20 packets in State's exhibit 28E. She stated that based upon those preliminary tests and the results of the tests on the other powder, this substance was "probably" cocaine. She weighed another single packet that contained 0.31 grams.

On January 20, 1984, Ms. Dietrich examined 14 packets of white and brown powder which had been contained in State's exhibits 28E

and 28F. On one packet marked "40," on which color and infrared spectrum (IR) tests were done, the spectrum from the packet matched a standard heroin spectrum. A packet marked "Test 10" was weighed and color tests were performed. On a packet marked "one-half," the powder was subjected to color and IR tests. Ms. Dietrich stated that the spectrum obtained from the powder matched the standard heroin spectrum. She also weighed seven additional packets which were subjected only to color tests. Ms. Dietrich stated that in her opinion, both the white and brown powder from those packets was heroin.

On April 24, 1985, Ms. Dietrich weighed and performed color tests on each of the clear packets that had not previously been weighed or subjected to the color tests. She then grouped the packets together, numbering them as Q1, Q2 and Q3. Items in Q1 did not, in her opinion, contain a controlled substance. Q2 contained 54 packets which she believed to be cocaine; however, only two of the packets were subjected to the definitive IR test. Of the 63 packets in exhibit Q3, the substances believed to contain heroin, only three packets were subjected to the IR test. On cross-examination, Ms. Dietrich conceded that using only the color tests or a color test in combination with a crystal test would not prove to a reasonable scientific certainty that the substance being examined was cocaine or heroin.

Dr. Vincent Papa testified in defendants' case in chief. He testified that color tests, crystal tests and UV tests are not conclusive in that they cannot identify a substance with a reasonable degree of scientific certainty. He also stated that for IR test results to be reliable, a blank IR run on the potassium pellet used in the test was required to be sure that it was not contaminated. Dr. Papa further stated that a spectrophotometer, the instrument used in the infrared test, should be calibrated daily to insure accuracy.

Defendants' motion to suppress was renewed at trial and was again denied. Defendants were found guilty of possession with intent to deliver more than 30 grams of cocaine and possession with intent to deliver more than 15 grams of heroin. Judgment was entered only as to count I, for possession of cocaine. Defendant Hill was sentenced to 20 years in the Illinois Department of Corrections, August was sentenced to 12 years and Williams was sentenced to 10 years. They now appeal.

■ Defendants' first contention is that an illegal search was conducted by the police when Officer Hodge misrepresented her identity in order to obtain a view of their room. They note that motel rooms are entitled to the same high degree of protection by the fourth amendment as homes (*People v. Eichelberger* (1982), 91 Ill. 2d 359,

365, 438 N.E.2d 140, *cert. denied* (1982), 459 U.S. 1019, 74 L. Ed. 2d 514, 103 S. Ct. 383), and that when an officer causes a person to open a motel room door and the officer looks into the room, this constitutes an impermissible search under *Johnson v. United States* (1948), 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367. Defendants also argue that affirmative misrepresentations of their identity by the police in order to obtain probable cause constitutes a violation of the fourth amendment and that any such misrepresentation also nullifies any possibility that Officer Hodge's search was consensual, citing *People v. Walker* (1964), 30 Ill. 2d 213, 215, 195 N.E.2d 654. We disagree.

In *Lewis v. United States* (1966), 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424, the United States Supreme Court noted that in certain types of crimes, among them the violation of narcotics laws, the government is entitled to use decoys and to conceal the identity of its agents, as such concealment is often necessary in order to obtain evidence for prosecution. *Lewis*, 385 U.S. at 209-10, 17 L. Ed. 2d at 315-16, 87 S. Ct. at 426-27. See also *People v. Moore* (1981), 105 Ill. App. 3d 264, 434 N.E.2d 300, *appeal denied* (1982), 91 Ill. 2d 577.

In *Lewis*, an undercover narcotics officer misrepresented his identity by telephone and was twice invited into defendant's home to purchase marijuana. The defendant was arrested after the second drug purchase. The defendant argued that in the absence of a warrant, the official intrusion into his home constituted a fourth amendment violation. The Court rejected that argument, finding that there was no violation when the government agent accepted an invitation to enter the premises for the very purpose contemplated by the occupant. The Court qualified its finding by stating that its conclusion in *Lewis* does not mean that whenever entry is obtained by invitation, an agent is authorized to conduct a general search for incriminating materials. (*Lewis*, 385 U.S. at 211, 17 L. Ed. 2d at 316, 87 S. Ct. at 427-28.) As in *Lewis*, the defendants here voluntarily opened the door, giving Officer Hodge the opportunity to observe the contraband. The fact that Hodge was not who she appeared to be did not void defendants' consent. See *United States v. Diaz* (7th Cir. 1987), 814 F.2d 454, 457.

We also reject defendants' argument that the police did not have probable cause before defendants opened the door of the motel room and thus the search was illegal. *Johnson v. United States* (1947), 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367, relied on by defendants, does not support this contention.

In *Johnson*, police detected the smell of burning opium coming from inside a hotel room. They knocked on the door, announced their office and entered. An officer placed the defendant under arrest and

then sought and found incriminating evidence. The Supreme Court held that the search violated the fourth amendment in that the police lacked probable cause to arrest until they had entered and searched the room. In the instant case, unlike *Johnson*, probable cause was established when Officer Hodge saw the paraphernalia of the narcotics trade and powder that looked like cocaine from the open doorway of the room. No entry was demanded or made under color of office until probable cause had been established.

There is also no merit to defendants' contention that the alleged search here is analogous to the searches found to violate the fourth amendment in *People v. Bankhead* (1963), 27 Ill. 2d 18, 187 N.E.2d 705, and *People v. Trull* (1978), 64 Ill. App. 3d 385, 380 N.E.2d 1169, *appeal denied* (1979), 72 Ill. 2d 584. In *Bankhead*, the officers used a janitor's passkey to enter a hotel room while the defendants were present. *Trull* involved the warrantless use of a key found at the scene of a burglary to enter the common area of the suspect's apartment building. In light of the fact that the defendants here voluntarily opened the door to Officer Hodge, who remained in an area in which defendants had no expectation of privacy, we believe that no violation of defendants' fourth amendment rights occurred. Accordingly, we find that the trial court's denial of the motion to suppress was proper.

■ Defendants next contend that exigent circumstances did not justify the warrantless entry into the motel room, as a warrant could quickly have been sought and there was no risk that the defendants would have fled or destroyed the evidence. They note that the incident at issue here occurred at midday on a Wednesday afternoon within proximity to three courts where a magistrate would have been available to rule on a request for a warrant.

Warrantless searches have been held to be *per se* unreasonable under the fourth amendment, subject to certain limited exceptions. (*United States v. Karo* (1984), 468 U.S. 705, 717, 82 L. Ed. 2d 530, 542-43, 104 S. Ct. 3296, 3304; *Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514.) The Supreme Court also has acknowledged that those suspected of drug offenses are no less entitled to the protection of the fourth amendment than those suspected of nondrug offenses. (*United States v. Karo* (1984), 468 U.S. 705, 717, 82 L. Ed. 2d 530, 542-43, 104 S. Ct. 3296, 3304.) The government has the burden of proving that one of the few exceptions to the warrant requirement excused the need to seek a warrant. *McDonald v. United States* (1948), 335 U.S. 451, 454-56, 93 L. Ed. 153, 157-59, 69 S. Ct. 191, 192-94.

Exceptions to the warrant requirement include searches of items

in "plain view" (*People v. Connolly* (1973), 55 Ill. 2d 421, 427, 303 N.E.2d 409) and emergency searches under exigent circumstances (*Payton v. New York* (1980), 445 U.S. 573, 583, 63 L. Ed. 2d 639, 648-49, 100 S. Ct. 1371, 1378; *People v. Eichelberger* (1982), 91 Ill. 2d 359, 370, 438 N.E.2d 140, *cert. denied* (1982), 459 U.S. 1019, 74 L. Ed. 2d 514, 103 S. Ct. 383).

In our opinion, Officer Hodge reasonably believed a crime was being committed in her presence based on the substances and paraphernalia that were within plain view. Once she had probable cause to believe the items constituted contraband, the items were subject to seizure even in the absence of a warrant. (*Harris v. United States* (1968), 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992; *People v. Tate* (1967), 38 Ill. 2d 184, 230 N.E.2d 697.) Moreover, exigent circumstances justified the warrantless search.

■ There are several factors to be considered in determining whether exigent circumstances exist sufficient to justify seizure of items without a warrant: (1) no unjustified delays in which a warrant could have been obtained; (2) a belief that the defendant was armed or that the situation was dangerous; (3) a clear showing of probable cause justifying a warrantless entry; and (4) a peaceful entry onto the premises. *People v. Abney* (1980), 81 Ill. 2d 159, 169-73, 407 N.E.2d 543.

Although at least one of the defendants had been in possession of the motel room for about three days, there is nothing in the record to indicate that the police officers were aware that defendants were preparing to package and distribute the controlled substances prior to the time that Officer Hodge knocked on the door the second time and observed the mounds of powder and other drug paraphernalia in plain view. Having seen the narcotics and drug paraphernalia, it was also reasonable for her to conclude that there was danger of violence, and in fact, a .38 caliber handgun and cartridges were recovered from defendant's room. The other requirements of *Abney* also were satisfied here in that there was a clear showing of probable cause and the officers did not use force to gain entry to the premises. Under these circumstances, we conclude that the warrantless entry was justified.

■ Defendants' argument that the arresting officers lacked probable cause because Officer Hodge could not have known by sight that the white powder she saw from the doorway was cocaine is not persuasive. Officer Hodge was a narcotics officer with approximately four years' experience who had been involved in over 100 narcotics-related arrests. The reasonableness of the warrantless search is not determined by Officer Hodge's ability to identify cocaine on sight but

by whether she reasonably believed a crime was being committed based upon what she observed. (*People v. Jones* (1964), 31 Ill. 2d 240, 243, 201 N.E.2d 402.) Officer Hodge testified that she saw not only piles of white powder on the motel room desk, but also saw a triple beam scale, numerous packets and defendant Hill mixing powders. Under these circumstances Officer Hodge's belief that a crime was being committed was entirely reasonable and therefore justified the warrantless arrest.

Defendants next contend that the State failed to test the suspected narcotics in accordance with established scientific methods and therefore the State failed to prove beyond a reasonable doubt that the substances seized were controlled substances.

Jean Dietrich, the State's forensic chemist, testified that she performed a series of tests on exhibit 28, which contained the powders seized from defendants' motel room. After weighing the powder, she performed three preliminary color and screening tests, the purpose of which was to indicate whether there was a probability that the material contained a controlled substance. Having determined that the substances probably contained cocaine and heroin, she took random samples from each group of powders, scanned them using an infrared and ultraviolet spectrophotometer and produced graphs of the results.

There was testimony that although the Chicago crime laboratory typically uses published spectra as a standard for comparison, that was not done in the present case. The graphs generated were compared instead with standard laboratory graphs of cocaine and heroin generated by the Chicago police department. Ms. Dietrich testified that on the basis of these tests, she was able to determine with a reasonable degree of scientific certainty that the State's exhibits contained cocaine and heroin.

Defendants' expert witness, Dr. Vincent Papa, testified that the color and crystal tests as well as the ultraviolet screening test used by the Chicago crime laboratory are not conclusive tests. He also stated that he believed that gaschromatography and maspectroscopy were preferable testing methods.

■ Whether the substance in issue contains a controlled substance under the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1100 *et seq.*) is a question for the finder of fact, in this case the trial court. (See *People v. Kaludis* (1986), 146 Ill. App. 3d 888, 893, 497 N.E.2d 360, *appeal denied* (1986), 113 Ill. 2d 564.) We will not reverse the determination of the fact finder unless it is clearly against the manifest weight of the evidence.

The trial court here heard extensive testimony from the State's

forensic chemist as well as from defendants' expert witness. Defendants' witness had not tested the substances in question, nor was he familiar with the procedures of the Chicago police department crime laboratory. After hearing the testimony of both witnesses, the trial court found that the State's witness had established beyond a reasonable doubt that the seized substances contained cocaine and heroin. On review of the record, we believe this determination is not against the manifest weight of the evidence.

With respect to defendants' claim that the test samples may have been tainted and that the calibration of the spectrophotometer was not checked on a sufficiently regular basis to guarantee accuracy, these claims are entirely speculative and are not substantiated by any facts in the record. We will not find the chemical analysis of a suspected controlled substance invalid solely on the basis that there is a speculative possibility that test samples being analyzed could have been contaminated. (See *People v. Schlig* (1983), 120 Ill. App. 3d 561, 567, 458 N.E.2d 544.) We also note that under Illinois law, it is not required that the chemical analyst determine for himself the reliability of the instrument being used in the evaluation of the suspected controlled substance. *People v. Brannon* (1978), 59 Ill. App. 3d 531, 534, 375 N.E.2d 840, *appeal denied* (1978), 71 Ill. 2d 610, citing 2 Wigmore, Evidence §665a (3d ed. 1940).

Although we believe that the testing methods used proved beyond a reasonable doubt that the controlled substances contained both cocaine and heroin, we agree with defendants' contention that the State failed to prove beyond a reasonable doubt that they possessed a Class X amount, *i.e.*, more than 30 grams of a controlled substance. The basis for defendants' argument is that the weight of substances in bags that were not conclusively tested was counted by the trial court in determining the total weight of the narcotics.

█ Where there is a lesser included offense for possessing a smaller amount, the weight of the substances containing a drug is an essential element of a charge of possession. (*People v. Speed* (1982), 106 Ill. App. 3d 890, 896, 436 N.E.2d 712, *appeal denied* (1982), 91 Ill. 2d 579.) The weight of the substance containing the drug must therefore be proved beyond a reasonable doubt. (*People v. Games* (1981), 94 Ill. App. 3d 130, 131, 418 N.E.2d 520.) Where separate bags or containers of suspected drugs are seized, a sample from each bag or container must be conclusively tested to prove that it contains a controlled substance. *People v. Ayala* (1981), 96 Ill. App. 3d 880, 882, 422 N.E.2d 127; *People v. Games* (1981), 94 Ill. App. 3d 130, 131, 418 N.E.2d 520.

The State argues that a chemist need test only random samples in order to be qualified to render an opinion as to the makeup of the entire substance, citing *People v. Kaludis* (1986), 146 Ill. App. 3d 888, 497 N.E.2d 360. The State also contends that the preliminary color tests, coupled with the performance of the infrared tests on some of the packets, was sufficient evidence to allow an inference that all of the packets contained cocaine. *People v. Garcia* (1964), 52 Ill. App. 2d 481, 202 N.E.2d 269.

While the general rule is that a chemist need test only random samples in order to be qualified to render an expert opinion as to the whole amount seized, this rule has its limitations. (*People v. Ayala* (1981), 96 Ill. App. 3d 880, 422 N.E.2d 127; *People v. Games* (1981), 94 Ill. App. 3d 130, 418 N.E.2d 520.) In *Ayala* and *Games*, defendants were charged with possession of heroin and delivery of cocaine, respectively. In both cases the severity of the offense charged was based on the amount of contraband contained in two separate packages. In each case, the chemist who testified for the State tested only one of the packages conclusively but rendered opinions that both packages contained a controlled substance. In both *Ayala* and *Games*, this court refused to permit the amount of substance which was not conclusively analyzed to be considered in determining the severity of the offense. The situation in the instant case is dissimilar from *Ayala* and *Games* only in that here, there were numerous bags of white and brown powders seized from the defendants.

The authorities cited by the State that support an inference based on random samplings are distinguishable. In *People v. Kaludis* (1986), 146 Ill. App. 3d 888, 497 N.E.2d 360, the issue was whether random sampling was sufficient to sustain a conviction for possession of 100 tablets suspected of being methaqualone. According to the forensic chemist who testified, the tablets all exhibited the same physical characteristics with respect to size, shape and hardness and all were marked "Lemmon 714." The chemist conducted several tests on randomly selected tablets which conclusively indicated the presence of methaqualone. The court on appeal found that where the substance is homogeneous, random sampling provides a sufficient basis for proving beyond a reasonable doubt that all of the tablets contained a controlled substance. (*Kaludis*, 146 Ill. App. 3d at 896.) At issue in *People v. Garcia* (1964), 52 Ill. App. 2d 481, 202 N.E.2d 269, was not whether random sampling could be used to infer that the total amount of a substance seized was in fact a controlled substance but whether the State proved beyond a reasonable doubt that any of a substance contained in 10 foil packets seized from the defendant contained her-

oin. Moreover, the defendant in *Garcia* initially admitted that the substance was heroin and that he kept it for his own use. *Garcia*, 52 Ill. App. 2d at 488.

■ In our opinion, the tests performed here were insufficient to prove beyond a reasonable doubt that over 30 grams of the seized powder in fact contained cocaine. A test existed which would have proved beyond a reasonable doubt whether the powder in the untested bags contained cocaine, yet it was uncontroverted that the conclusive test was performed on only 21.93 grams of the powder. Defendants were, however, proved guilty beyond a reasonable doubt of possession of less than 30 grams of cocaine. We therefore reduce defendants' convictions to possession of less than 30 grams of a substance containing cocaine.

Defendant Williams contends that he was not proved guilty beyond a reasonable doubt of possession with the intent to deliver as he had only been present in the room for a few minutes before the arrest took place. He maintains that all he did was answer the door and have brief conversations with Officer Hodge, which is insufficient to show possession.

■ Part of the crime of unlawful possession of controlled substances requires that the State establish that the accused had knowledge of the presence of the narcotics and that the narcotics were in his immediate and exclusive control. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 438 N.E.2d 1282, *appeal denied* (1982), 92 Ill. 2d 571, citing *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939.) Because knowledge is seldom susceptible to direct proof, it may be proved by evidence of acts, declarations, or conduct from which it is reasonable to infer that the accused knew of the existence of the narcotics at the place they were found. (*People v. Bell* (1972), 53 Ill. 2d 122, 126, 290 N.E.2d 214.) Actual physical possession need not be demonstrated in order to sustain a conviction if constructive possession can be inferred from the facts. *People v. Stamps* (1982), 108 Ill. App. 3d 280, 292, 438 N.E.2d 1282, *appeal denied* (1982), 92 Ill. 2d 571.

Whether there is possession and knowledge are both questions of fact to be determined by the jury or the trial court and we will not disturb their findings on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 471, 414 N.E.2d 1072, *appeal denied* (1981), 83 Ill. 2d 573.

Defendant Williams relies on *People v. Pugh* (1967), 36 Ill. 2d 435,

223 N.E.2d 115, *People v. Calhoun* (1977), 46 Ill. App. 3d 691, 361 N.E.2d 55, *appeal denied* (1977), 66 Ill. 2d 632, and *People v. Howard* (1975), 29 Ill. App. 3d 387, 330 N.E.2d 262, in which the court reversed convictions based on the lack of evidence of constructive possession. We find these cases to be distinguishable.

In *Pugh*, the court found no constructive possession where the defendant was present in someone else's apartment and narcotics had been found hidden behind a wall molding and it was not proved that defendant ever knew of the contraband. (*Pugh*, 36 Ill. 2d at 437.) In *Calhoun*, the defendants were arrested in an apartment in which they were visiting. They were convicted of possessing a controlled substance (amobarbitol) and possessing and manufacturing cannabis. Evidence showed that the defendants were in actual possession of the cannabis, but on appeal, the court reversed the conviction for constructive possession of the amobarbitol, holding that the evidence was insufficient to establish that control of the premises had been temporarily turned over to the defendants. *Calhoun*, 46 Ill. App. 3d at 695.

*People v. Howard* (1975), 29 Ill. App. 3d 387, 330 N.E.2d 262, also cited by defendants, is a case in which the State sought to prove actual possession. The police in *Howard* were looking for a suspect who had been selling marijuana from the bathroom of the motel room. The police entered the room and arrested the defendant, who was sitting about a foot away from a bag of marijuana, and the suspect. The court reversed defendant's conviction for actual possession there on the basis that mere proximity was insufficient to establish actual possession. *Howard*, 29 Ill. App. 3d at 389.

At issue here is not actual possession but constructive possession. Testimony at trial indicated that Williams had been in the room for several hours and that he was the lookout man, as evidenced by the fact that he opened the door to Officer Hodge twice. The room was a small one and while Williams was acting as lookout, Hill was packaging narcotics in an open area of the room. On these facts, we believe the trial court properly found that defendant Williams was guilty of constructive possession of a controlled substance based on his control over the premises.

Defendant Hill asks this court to reduce his sentence pursuant to our authority under Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)), on the grounds that his sentence was unfairly disparate from those of his codefendants and because his sentence was excessive in light of his background and his health. As we are remanding this cause for resentencing in light of our finding that the State failed to prove beyond a reasonable doubt that defendants possessed more

than 30 grams of cocaine, we need not reach this issue.

For the reasons stated above, the judgment of the circuit court of Cook County convicting defendants of unlawful possession of more than 30 grams of a controlled substance with intent to deliver is modified to a judgment convicting defendants of possession of less than 30 grams of a controlled substance with intent to deliver. As modified, the judgment of the circuit court of Cook County is affirmed and the cause is remanded for resentencing.

Judgment affirmed as modified and cause remanded.

CAMPBELL, P.J., and BUCKLEY, J., concur.