Affirmed and Opinion filed August 18, 2005









Affirmed and Opinion filed August 18, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00032-CR

____________

 

RONALD JOHNSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 778,983

 



 

O P I N I O N








Appellant, Ronald Johnson, was charged by
indictment with possession of at least 400 grams of cocaine with intent to
deliver.  Appellant filed a motion to
suppress the evidence which was subsequently overruled after a hearing.  Appellant then entered a plea of guilty.  The trial court found appellant guilty and
assessed his punishment at confinement in the state penitentiary for a term of
25 years and a fine of $1,000.00.  On his
first appeal, appellant claimed the trial court erred in denying his motion to
suppress.  The State argued we had no
jurisdiction to consider the appeal due to a defective notice of appeal.  This court found jurisdiction based, in part,
on the Texas Court of Criminal Appeals decision in Riley v. State, 825
S.W.2d 699 (Tex. Crim. App. 1992). 
Having found jurisdiction, we reversed the trial court=s judgment for
error in denying appellant=s motion to
suppress.  See Johnson v. State,
47 S.W.3d 701 (Tex. App.CHouston [14th Dist.] 2001), rev=d, 84 S.W.3d 658
(Tex. Crim. App. 2002).  On the State=s petition for
discretionary review, the Texas Court of Criminal Appeals abrogated its
previous holding in Riley upon which we had relied, reversed our
judgment, and dismissed the appeal for want of a valid notice of appeal.  Johnson v. State, 84 S.W.3d 658, 660
(Tex. Crim. App. 2002).

Thereafter, appellant filed a
post-conviction writ of habeas corpus alleging that ineffective assistance of
counsel denied him a meaningful appeal. 
The court of criminal appeals granted relief and ordered that appellant
be permitted to file an out-of-time notice of appeal.  Ex parte Johnson, No. 74843, 2003 WL
22909099 (Tex. Crim. App. Dec. 10, 2003). 
Accordingly, appellant presents a single point of error alleging that
the trial court erred in denying his motion to suppress.  We affirm.

The record reflects that sometime after
10:00 p.m. on March 26, 1998, Harris County Deputy Sheriff Shannon Bowdoin left
his substation to assist Deputy I. G. Gordy in executing an unrelated arrest
warrant.  While en route, Bowdoin was Aflagged down@ by a citizen who
stated that he had been chasing an armadillo between two nearby houses when he
inadvertently observed a man processing what he knew to be crack cocaine.  Bowdoin advised Gordy on the radio that he
was going to Acheck out@ the citizen=s report, and
Gordy agreed to assist Bowdoin in his investigation.  The citizen told the deputies that while
searching for the armadillo, he had peered through a wooden fence surrounding
the back yard of a house.  Due to the
late hour, he could see inside the lighted house and noticed a gentleman
standing in his kitchen processing cocaine.








Bowdoin and Gordy went to the house indicated by the
citizen.  They exited their patrol
vehicles and walked toward the east side of appellant=s home.  A large kitchen window and glass patio door
were on the east side of appellant=s home.  As 
Bowdoin peered through the fence, he saw a triple beam scale in an upper
cabinet on the west wall of appellant=s kitchen.  He knew from experience that triple beam
scales are commonly used in the processing and sale of narcotics.  Bowdoin also saw a box of baking soda near
the scale which he knew was used in the creation and Acutting@ of crack
cocaine.  At this time Bowdoin and Gordy
decided they Awould do what is commonly referred to as a
knock and talk.@ 
Bowdoin described the procedure:

Well, basically you knock on their front door, introduce
yourself, state why you are there.  You
know, this is why we are here.  Do you
have a problem with us coming in and taking a look around?  That=s just a common
practice.

Bowdoin testified that he hoped to get appellant=s consent to
search the premises.




 
 
 
 
 




 

 

 

 

 

 

 

 

 

 

 

 

 








Gordy began to circle around the house to
knock on the front door located on the southwest corner of the house.  Bowdoin tried to position himself in a
location where he could cut off any potential escape from the rear of the
house.  Bowdoin observed the back yard
was accessible through an open gate on the north side of the house near
appellant=s garage. 
While that location did not permit Bowdoin to directly view the patio
door on the rear of the house, it did allow him to see a large portion of the
backyard, and it gave him ready access to the backyard should he need to
apprehend a fleeing suspect. 
Unfortunately, the area around the gate was illuminated by a floodlight
in the alley.  As Bowdoin stood in the
open gate, appellant unexpectedly opened the window treatments on a north-side
window of the house.  Almost
face-to-face, Bowdoin observed that appellant looked startled.  Appellant immediately retreated into the
house.

Fearing for Gordy=s safety, Bowdoin
entered appellant=s backyard.  Bowdoin rounded the northeast corner of the
house, moved along the east wall, and stopped at the corner of the patio.  As he peered around the corner, Bowdoin noticed
a machete laying on the patio.  He then
observed appellant enter the kitchen and walk to the sink.  Bowdoin stepped onto the patio and walked up
to a sliding glass door and window where he again came virtually face-to-face
with appellant as appellant was reaching for a plastic bag filled with cookies
of crack cocaine.  Upon seeing Bowdoin,
appellant attempted to cover the bag of cocaine with a muffin pan.  Bowdoin drew his weapon and ordered appellant
to the floor.  Appellant complied.  Appellant then crawled toward Bowdoin, as
instructed, and unlocked the patio door. 
Bowdoin arrested appellant. 
Appellant subsequently gave Bowdoin and Gordy written consent to search
the house, and cocaine was found and seized in various locations in the house.








Appellant contends, in his sole point of
error, that the trial court erred in denying his motion to suppress.  During oral argument, appellant claimed, for
the first time on appeal, that we need not revisit the propriety of the search
due to the Alaw of the case@ doctrine.  Because we previously held the police lacked
probable cause, appellant contends we should reach the same holding here.  AThe >law of the case= doctrine provides
that once a question of law in a particular case has been finally resolved,
that question will not be reconsidered in subsequent proceedings of the same
case.@  Ex parte Schuessler, 846 S.W.2d 850,
852 n.7 (Tex. Crim. App. 1993).  Law of
the case is a court‑made doctrine designed to promote judicial
consistency and efficiency by eliminating the need for appellate courts to
prepare opinions discussing previously resolved matters.  Howlett v. State, 994 S.W.2d 663, 666
(Tex. Crim. App. 1999).  The doctrine=s application is
not inflexible, however.  See  Ex parte Granger, 850 S.W.2d 513, 523
(Tex. Crim. App. 1993).  An appellate
court may reconsider its earlier disposition of a point of law if the court
determines that there are Aexceptional@ circumstances
that mitigate against relying on its prior decision.  Id. 
Here, our previous opinion was a nullity because we lacked jurisdiction
to consider the appeal.  See Johnson
v. State, 84 S.W.3d 658, 660B61 (Tex. Crim.
App. 2002).  As such, our previous
opinion was void ab initio.  State v.
Roberts, 932 S.W.2d 700, 702 (Tex. App.CTyler 1996, no
pet.).  Accordingly, we hold our previous
judgment does not govern here, and we are not bound by the law of the case
doctrine.  See Schuessler, 846
S.W.2d at 852 n.7.

For its part, the State claims we need not
reach the merits because appellant waived any error by not objecting at trial
on the same grounds now presented on appeal. 
The State asserts in its brief that appellant presented at trial a
generic motion to suppress that merely objected to Aall evidence
seized in the instant case because of the illegal detention, search, and arrest
of the defendant and his home.@  Thus, the State postulates that we cannot now
consider appellant=s contention that the arrest and search
were not supported by probable cause.








A motion to suppress is a specialized
objection to the admissibility of evidence. 
Porath v. State, 148 S.W.3d 402, 413 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  Therefore, a
motion to suppress must meet all of the requirements of an objection, that is,
it must be timely and sufficiently specific to inform the trial court of the
complaint.  Id.  Here, appellant=s motion to
suppress states the search Awas conducted . .
. without an arrest or search warrant.@  When a defendant seeks to suppress evidence,
he bears the burden to rebut the presumption of proper police conduct.  Russell v. State, 717 S.W.2d 7, 9
(Tex. Crim. App. 1986).  This initial
burden is met by proving the police conducted the search without a
warrant.  Id.   Here, the State=s attorney
admitted the search had been conducted without the benefit of a warrant. Once
the defendant establishes (1) that a search or seizure occurred and (2) that no
warrant was obtained, the burden shifts to the State to prove the
reasonableness of the search pursuant to one of the recognized exceptions to
the warrant requirement.  Id.

The State put on evidence that the search
was reasonable (and thus fell within an exception to the warrant requirement)
because it was supported by (1) probable cause and exigent circumstances and
(2) written consent.  Having made a prima
facie showing that the search fell within at least two well-recognized
exceptions to the warrant requirement, we find the burden then shifted back to
the defendant to show the invalidity of these exceptions.[1]  We do not mean to imply by this that
appellant was required to present additional evidence to prevail on his
motion to suppressCthe trial court, as the trier-of-fact,
could conclude, for example, the State=s evidence was
insufficient or not credible.  However,
if appellant had further complaints or objections regarding the admissibility
of the evidence, he was obliged to make them clear to the trial court.  Porath, 148 S.W.3d at 413.  In other words, appellant must have made the
trial judge aware of his objection and given her the opportunity to address
it.  Id.








Appellant=s written motion
to suppress complained only that the search was conducted without the benefit
of a warrant.  The record fails to show
that appellant made any further objection or complaint once the State offered
evidence showing the search allegedly fell within several warrant exceptions.[2]  However, a defendant may always challenge the
sufficiency of the evidence for the first time on appeal.  Coggin v. State, 123 S.W.3d 82, 89
(Tex. App.CAustin 2003, pet. ref=d).  Here, appellant contends in his sole point of
error that the search was not supported by probable cause.  Moreover, it appears appellant=s contention, both
at trial and on appeal, is the same, i.e., that the State=s evidence, even
if true, fails to show the existence of probable cause.  Accordingly, we overrule the State=s contention that
the issue has not been preserved for our review.

In his brief, appellant contends he had a
reasonable expectation of privacy in his backyard, and that Deputy Bowdoin
unlawfully invaded the curtilage of his home without probable cause when he
entered the backyard.  AProbable cause@ is a practical,
nontechnical concept.  Beck v. Ohio,
379 U.S. 89, 91 (1964).  It ripens at the
moment facts and circumstances within the officer=s knowledge, and
of which he has reasonably trustworthy information, are sufficient to warrant a
prudent man in believing the suspect has committed or is committing an
offense.  Id.  Where police are approached by a Anamed@ private citizen
to report that he has witnessed a criminal act committed by another, Athe credibility
and reliability of the information is inherent.@  Esco v. State, 668 S.W.2d 358, 360B361 (Tex. Crim.
App. 1982); Barton v. State,  962
S.W.2d 132, 143 (Tex. App.CBeaumont 1997,
pet. ref=d).  Here, however, the citizen is not named.  The record does not reflect whether his
namelessness is due to the citizen=s desire for
anonymity or a simple oversight on the part of the police.  In any event, we recognize there is a split
of authority regarding the degree of credibility afforded to such unnamed
citizens.








In State v. Fudge, 42 S.W.3d 226,
228 (Tex. App.CAustin 2001, no pet.), an unnamed taxi cab
driver approached an Austin police officer and pointed out a white pickup truck
that he claimed was Aall over the road.@  The officer immediately stopped the truck and
asked the driver to step out.  The driver
grabbed the side of the truck to maintain his balance, had bloodshot eyes, and
had a strong odor of alcohol on his breath. 
After failing a field sobriety test, the driver was arrested for driving
while intoxicated.  The court of appeals
held that by approaching the officer face‑to‑face, the cab driver
put himself in a position where he could have been held accountable for his
intervention.  Id. at 232.  Thus, the cab driver=s credibility was
such that the officer had reasonable suspicion to authorize a temporary
detention.  Id.

In Bilyeu v. State, 136 S.W.3d 691,
694 (Tex. App.CTexarkana 2004, no pet.), two police
officers were taking a break in the parking lot of a convenience store at
approximately 2:00 a.m. when they were approached by an unidentified citizen
who reported that he had seen a woman asleep at the wheel of a gold
Mercedes-Benz automobile while stopped at a nearby intersection while the
traffic light was green.  The citizen
then identified the vehicle as it slowly passed by the officers= location at ten
miles per hour in a thirty-five-mile-per-hour zone.  The officers stopped the vehicle and
determined the driver was intoxicated. 
The court of appeals chose not to follow Fudge; rather the court
held the information provided by the unnamed citizen was akin to information
from an anonymous tip.  Id. at 695
n.3.








The reasonableness of a police officer=s actions under
the Fourth Amendment is not capable of precise definition or mechanical
application.  Rhodes v. State, 913
S.W.2d 242, 249  (Tex. App.CFort Worth  1995), aff=d, 945 S.W.2d 115
(Tex. Crim. App. 1997).  Accordingly, we
should not casually second‑guess the officers= conduct from the
relative tranquility of our chambers.  Id.  Rather, reasonableness must be judged from
the perspective of a reasonable officer on the scene, rather than with the
20/20 vision of hindsight.  Id.  Allowance must be made for the fact that
police officers are often forced to make split‑second judgments in
circumstances that are tense, uncertain, and rapidly evolving.  Id. 
Thus, we recognize that situations may arise where a serious offense
reportedly has occurred, is occurring, or is about to occur such that it would
be foolhardy for the police to suspend their investigation until they had first
determined the identity of the citizen-informant.  The exigencies in such a case render the
police officer=s immediate investigation reasonable.   In such a scenario, we agree with the
holding in Fudge, namely, that an unnamed citizen=s unsolicited,
face-to-face report of criminal conduct is inherently more reliable than an
anonymous tip because the citizen could have been held accountable for his
intervention.

While standing outside the curtilage, the
police corroborated the citizen=s report of
narcotics activity by observing a triple beam scale near a box of baking soda
in appellant=s kitchen. 
While baking soda is a common in most kitchens, triple beam scales are
not.  The chance of randomly observing a
box of baking soda in close proximity to a triple beam scale while passing
behind a residence is extremely remote, and thus this observation greatly
strengthened the credibility of the citizen=s report that he
recognized crack cocaine being manufactured in appellant=s home.[3]  Accordingly, we hold the police officers had
probable cause to believe appellant was committing a criminal offense.








Appellant further contends that because
the police had no probable cause to believe he was in possession of cocaine,
they had no probable cause to believe he would destroy the contraband upon
discovering the police outside his residence. 
Likewise, because the police had no probable cause to believe appellant
was committing a criminal offense, he reasons that the police had no probable
cause to believe he represented a physical threat to their safety.  Accordingly, appellant contends that because
there was no probable cause, there were no exigent circumstances justifying the
warrantless arrest and search.  In other
words, appellant=s argument regarding the lack of exigent
circumstances is derived from and rests solely upon his contention the police
did not possess probable cause to believe he was in possession of cocaine.  However, we have already resolved that issue against
appellant.  Thus, we overrule appellant=s contention.

Finally, appellant contends that because
the police lacked probable cause, their invasion of the curtilage was
improper.  Because the invasion of the
curtilage was improper, appellant contends his subsequent arrest was
improper.  Because his arrest was
improper, he contends his written consent to search was tainted Afruit of the
poisonous tree.@ 
Thus, his contention again rests entirely upon the alleged want of
probable cause.  Because we have already
determined that the police did, in fact, possess probable cause to believe
appellant was in possession of cocaine, his final contention also fails.

The judgment of the trial court is
affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment
rendered and Opinion filed August 18, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.

Publish
C Tex. R. App. P. 47.2(b).

 











[1]  See Telshow
v. State, 964 S.W.2d 303, 307 (Tex. App.CHouston
[14th Dist.] 1998, pet. ref=d); Hogan v. State, 954 S.W.2d 875, 876 (Tex.
App.CHouston [14th Dist.] 1997, pet. ref=d); Myles v. State, 946 S.W.2d 630, 635 (Tex.
App.CHouston [14th Dist.] 1997, no pet.).  These cases stand for the proposition that
once a defendant establishes a seizure occurred without a warrant, the burden
of proof then shifts to the State to produce evidence of a warrant.  But if evidence of a warrant is produced, the
burden shifts back to the defendant to show the invalidity of warrant.  We think the same rule applies when the
State, in lieu of a warrant, produces evidence of a warrant exception.  In such case, the burden shifts back to the
defendant to show the invalidity or inapplicability of the exception.  





[2]  Counsel may
well have made a more specific objection when arguing the merits of his
motion.  However, our record does not
contain any arguments or discussions at the conclusion of the suppression
hearing.





[3]  See United
States v. Buckley, 4 F.3d 552, 555B56 (7th
Cir. 1993) (fact that informant had seen cocaine, a triple beam scale, and
packaging materials was sufficient probable cause for a warrant); United
States v. Tate, 795 F.2d 1487, 1489 (9th Cir. 1986) (after discovering
narcotics in defendant=s home, observation of a triple beam scale,
containers, and a package containing rubber gloves inside his van was
sufficient to justify a search warrant for the van); Commonwealth v.
Cramutola,450 Pa. Super. 345, 351, 676 A.2d 1214, 1217 (1996) (holding that
report of concerned citizen and confidential informant that they had seen a
triple beam scale and a plate with razor blades in defendant=s kitchen and that defendant had refused to sell drugs
to informant because she did not know him was sufficient to establish probable
cause to believe defendant was trafficking in narcotics); People v. Hill,
169 Ill. App.3d 901, 910, 524 N.E.2d 604, 610 (1988) (holding that where police
officer saw defendant in possession of white powder, a triple beam scale, and
numerous packets, he had probable cause to make a warrantless arrest).