THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHELTON WILLIAMS, Defendant-Appellant.

First District (5th Division)   No. 1—88—1197

Opinion filed June 22, 1990.

504

Randolph N. Stone, Public Defender, of Chicago (Greg Koster and Aaron Meyers, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Walter Hehner, and Michael G. Rogers, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COCCIA delivered the opinion of the court:

Defendant Shelton Williams was charged by information with one count of possession with intent to deliver more than 30 grams of cocaine, a Class X felony (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)), and with one count of possession with intent to deliver between 30 and 500 grams of cannabis (marijuana), a Class 3 felony (Ill. Rev. Stat. 1985, ch. 56½, par. 705(d)). Following a 1988 bench trial, defendant was found guilty of both offenses. He was sentenced to concurrent terms of seven years' imprisonment on the cocaine charge and four years' imprisonment on the cannabis charge. He was also fined $120. On appeal, defendant asks this court to modify his convictions to reflect a reduction in the charges against him and to remand the case to the trial court for resentencing. He contends that the State proved only that he possessed 2.93 grams of cocaine (a Class 4 felony) and 88.67 grams of marijuana (also a Class 4 felony), and failed to prove his intent to deliver these substances. (See Ill. Rev. Stat. 1985, ch. 56½, pars. 1402(b), 704(d).) For reasons which follow, we affirm.

The record reveals that defendant was arrested at approximately

6:50 a.m. on December 12, 1986, in a second-floor apartment at 1620 South Komensky in Chicago. It is undisputed that a quantity of suspected narcotics was recovered from the kitchen of the apartment, along with an O'Haus triple-beam scale, and was inventoried and subjected to analysis by a Chicago police department chemist. It is also undisputed that defendant, who admitted police officers into the apartment through the back door, and his codefendant, Donnette Welch, had been on the premises for at least several hours prior to their arrest. Williams and Welch were tried together before the court on the same charges. No pretrial motions were filed relating to the defendant's arrest or the suppression of any evidence seized. At the close of the State's case, the trial judge granted Welch's motion for a directed finding of not guilty. Williams was found guilty as charged at the close of all the evidence. After the court denied his motion for a new trial, he brought this appeal.

Chicago police officer Pete Rogers testified for the State. Rogers recalled that he and his partner, Fernando Garcia, went to a two-flat building at 1620 South Komensky on December 12, 1986, at 6:50 a.m. The officers were there in response to a call that a murder suspect was believed to be hiding on the second floor. Rogers stated that he and Garcia, dressed in uniform, walked up the back stairs to the second-floor rear entrance, where they encountered a steel door. After Rogers knocked on the door, Williams came to the door and opened it. Rogers asked defendant if he owned the apartment, and Williams stated that he did. Defendant also stated, in response to Rogers' question, that two other persons were inside. Officer Rogers further testified that the steel door opened into a kitchen, where he observed a stove with a scale on it, and a table. On the stove, "right next to the scale," Rogers also observed a clear bag of white powder. Next to the white powder were two bags containing crushed green plant material. He then placed defendant under arrest.

Rogers further stated that Donnette Welch came into the kitchen from the living room at the front end of the apartment. Her arms were stretched out in front of her as she walked toward the stove. Rogers testified that Welch twice ignored his orders to stop and continued until she was about two feet from the stove. At this point, Rogers placed Welch under arrest. A third person, found sleeping fully clothed in the bedroom, was also arrested.

Officer Rogers further described the apartment where the suspect substances were seized. He stated that both the rear and front doors were steel doors. The front door was also barred. All of the glass windows in the apartment were painted black. In a utility closet, Rogers

observed a round hole, about a foot in diameter, through which one could see the first-floor apartment below. He also testified that the second-floor apartment was sparsely furnished, with only the stove and a table in the kitchen, a one-piece sofa and a television in the front room, and a cot in the bedroom. There was no refrigerator and no clothing in any of the closets. There were also no papers or documents indicating who resided in the apartment.

On cross-examination, Rogers explained that when he and Officer Garcia knocked on the back door of the apartment, other police officers were stationed outside the front door. Rogers acknowledged that he had no arrest warrant and that the murder suspect had been described only as a black male. After knocking once, defendant came to the door and asked who was there. Rogers responded that it was the police. Williams immediately opened the door and asked what the officers wanted. When Rogers explained that they were looking for a murder suspect, defendant responded that he was not that person. Rogers further stated that this conversation took place while the officers were on the back porch and defendant was standing in the door. The witness could not recall if he had his revolver drawn at the time. He stated that defendant had nothing in his hands.

Officer Rogers also described the suspect materials, which he stated were about five feet away from where he was standing when Williams invited the officers inside. The packages he observed were "rolled up *** like a ball" on the stove. After bringing the other man from the bedroom into the kitchen, Rogers approached the packages and examined them more closely. He testified that there were two items which appeared to be marijuana sticks, about "five inches around," and about five to six inches long, wrapped in plastic bags. Next to the sticks were two clear plastic bags of white powder which appeared to be cocaine, each containing numerous smaller packages. He further stated that all of this material was in plain view on the stove. Rogers acknowledged that he did not see Williams deliver any controlled substances at any time while he was on the premises. He further testified that defendant gave Rogers the three keys needed to unlock the front door of the apartment from the inside. Defendant retrieved the keys from his pants pocket after Rogers asked for them. Rogers stated that he used the keys to open the front steel door and the burglar gates on the inside and outside of that door in order to admit the other police officers to the apartment. Rogers further testified that Williams told him that he lived at 1606 South St. Louis, but also said that he had many addresses. The defendant told Rogers that the apartment was "his place." On redirect examination, Rogers testi-

fied that in his "police report" for the case, he listed 1620 South Komensky as defendant's address. However, on re-cross-examination, Rogers acknowledged that in his "arrest report," he listed 1606 South St. Louis as defendant's address.

Philip Somerville, a Chicago police department chemist, testified by stipulation that he performed a series of chemical analyses and observations upon the crushed green plants and white powder confiscated by Officer Rogers. The two plastic bags containing the plant material were weighed and were found to weigh 88.67 grams. Somerville's opinion, after performing the tests and analyses on the crushed green plant material, was that the material was in fact cannabis. The white powder was received by Somerville in two plastic bags, each containing 50 plastic packets of white powder, and an additional two plastic packets, for a total of 102 packets. All of the powder was weighed and was found to weigh, in total, 48.7 grams. Somerville's opinion, after performing a series of chemical analyses on the white powder, was that the white powder was in fact cocaine.

Defendant testified in his own defense. He stated that he and Welch had come to the apartment at about 3:30 a.m. or 4 a.m., from a party. They had driven there in a friend's station wagon, which they had parked on the street. Defendant stated that he knew that Keith Robinson lived in the apartment, and asked a man who came to the front door of the building if Robinson was there. The man told defendant that Robinson had just left, but that defendant could wait for him. Then someone let defendant and Welch into the second-floor apartment, where they waited in the living room, which was next to the front door, for about 30 minutes. At this point, defendant left the building and went out to the station wagon, but was unable to start it, although he worked with the cables and starter for a short time. He then returned to the apartment, where he was watching television with Welch in the front room when the police officers came to the back door. Williams further testified that he was wearing only a shirt and shorts when the police arrived. He explained that he had left his pants in the bathroom, where he had cleaned some mud from them after working on the car.

Defendant's account of the police officers' actions differed substantially from that of Rogers. He testified that Rogers "pulled a gun" on him when he opened the back door, held the gun in his face, and told him to "get back." After defendant told the "three or four" officers at the back door that there were two other persons in the apartment, the officers brought the man in the bedroom into the kitchen. Meanwhile, other officers came in the front door and brought

Welch from the front room into the kitchen. The defendant stated that he did not know how these officers got in the front door. He further testified that once all three persons were "lined up" in the kitchen, the police announced that they were going to search the house for a gun. One of the officers also reached up to the top of the "high" microwave-equipped stove and retrieved the scale. Defendant stated that he never saw the crushed green plants in the kitchen at any time, and saw the scale and cocaine packages for the first time when the officers brought them over to him in the kitchen and asked if he knew whose they were. Defendant replied that he did not know whose they were and that he had just come to the apartment from a party. He further stated that he also told the officers that the apartment was not his. He testified that he had a picture ID, with an address, on his person at the time. He also stated that he had gone nowhere in the apartment but the living room and bathroom before the police arrived. He was also unaware of any hole in the floor. With regard to house keys, he explained that he had no keys to the front door of the building. He stated that Annette Nelson, his brother's girl friend, who lived on the first floor, had opened that door for him. He described the door to the second-floor apartment as a brown wooden door without burglar bars, and the windows as being covered with dark brown plastic. According to defendant, the apartment had a sofa comprised of "four or five sectional pieces" and had both lights and heat.

On cross-examination, defendant explained that a man known as "Glen," who was an acquaintance of Keith Robinson, had let him into the second-floor apartment. He stated that he had been in the first-floor apartment many times, but had been on the second floor only a few times. Robinson had told defendant to meet him there so that defendant could return the station wagon, which was Robinson's. Defendant stated that Robinson was supposed to drive him "home." He further testified that his real address at the time of his arrest was 1606 South St. Louis, which he described as being 20 or 30 blocks from Komensky Street. He also stated that the man in the second-floor apartment was at the first-floor door when he returned from working on the car and had opened the door for him. When the police started "banging" on the back door, he was in the bathroom, cleaning the mud from his pants. He recalled that the police found "the cocaine" in the kitchen, while he was present, but he did not know where in the apartment they found the "marijuana." He acknowledged that he had seen cocaine before, but had "no idea" that these substances were in the apartment, because he had not searched it.

Following Williams' testimony, the defense rested. It was stipulated, in rebuttal, that in the City of Chicago, "Komensky Street is located at 4032 west and St. Louis Avenue is located at 3500 west," representing a distance of about five blocks. After hearing closing arguments, the trial judge found that defendant had control over the apartment and took acts consistent therewith. He further found that the defendant's testimony "d[id] not ring true." A judgment of guilty was entered against defendant on both counts.

OPINION

In the interest of clarity, we will briefly summarize the procedural context of this appeal. On December 12, 1989, while his opening brief was still in preparation, defendant filed with this court a motion to supplement the record on appeal, pursuant to Supreme Court Rule 329, with "the laboratory report which formed the basis of the stipulated testimony of chemist Philip Somerville." (107 Ill. 2d R. 329.) Defendant's motion was allowed. This report, accompanied by an affidavit of defense counsel, comprises what we will refer to as the "supplemental record" on appeal. The report is a one-page document headed "Laboratory Report, Crime Laboratory Division/Chicago Police." It is dated December 16, 1986, and includes Philip Somerville's signature. The report, by all appearances and as stated in the sworn affidavit of defendant's trial counsel, relates to the substances recovered from the second-floor apartment at 1620 South Komensky on December 12, 1986, by Officer Rogers. Although the exact meaning of certain reporting codes is unclear, the report would appear to indicate that the two plastic bags containing crushed green plant material and weighing a total of 88.67 grams were tested and that the results confirmed that the plant material was cannabis.

The report would also appear to indicate that six packets of white powder, weighing 2.93 grams, out of a total of 102 packets, weighing 48.7 grams, were tested, and that the results were positive for cocaine. The laboratory report does not specify which "chemical [and/or] microscopic identity tests" were performed on these packets. Nor does it specify which six packets, out of the two 50-packet plastic bags and two additional packets, were subjected to analysis. It is undisputed that the laboratory report comprises no part of the trial record óf this case, either as an exhibit offered or received into evidence, or as a document used or referred to for any purpose whatsoever by either party or by the court.

In his opening brief, defendant contended that his cocaine conviction must be modified, based on the police laboratory report in the

supplemental record. He maintained that because the chemist actually tested only six packets of white powder containing only 2.93 grams, the State did not prove beyond a reasonable doubt that the entire 48.7 grams of white powder confiscated was in fact cocaine. In its responsive brief, the State argued that Williams, who neither raised a trial objection to the stipulated testimony regarding the amount of cocaine tested, nor raised the issue in his motion for a new trial, has effectively waived the issue on appeal. Defendant, in his reply brief, argued that the State has not denied the accuracy of the report and that, furthermore, this court could consider the issue raised by the report in the context of ineffective assistance of counsel or, alternatively, as plain error, even if defendant has technically waived it. The State subsequently filed a motion to strike the supplemental record, asserting that it does not fall within the purview of Supreme Court Rule 329 (107 Ill. 2d R. 329). The State's motion was taken with the case. During oral argument, counsel for both parties acknowledged that the laboratory report was tendered to the defendant during the pretrial discovery process and was in possession of both parties at the start of trial. Following oral argument, the State filed a motion to strike the portion of defendant's reply brief which suggested that either ineffective assistance of counsel or plain error would suffice to bring the issue before this court. The State's motion cites as authority Supreme Court Rule 341(e)(7), which provides that points not raised in an appellant's initial brief "are waived and shall not be raised in the reply brief." (107 Ill. 2d R. 341(e)(7).) This motion was also taken with the case.

Supreme Court Rule 329, upon which defendant relies, provides that where "the record is insufficient to present fully and fairly the questions involved, the requisite portions may be supplied at the cost of the appellant" and, "[i]f necessary, a supplemental record may be certified and transmitted." (107 Ill. 2d R. 329.) Defendant contends that authority for considering the laboratory report in deciding the issues raised on appeal is to be found in *People v. Guest* (1986), 115 Ill. 2d 72, 503 N.E.2d 255. In *Guest*, the Illinois Supreme Court reviewed the defendant's convictions and sentences for murder, attempted murder, and unlawful use of weapons. The trial court had sentenced Guest to prison terms for the less serious charges, which were to run consecutively to prison terms imposed for other crimes by the States of Missouri, Tennessee, and California. It had also imposed the death penalty for the murder. After upholding his Illinois convictions and his death sentence, the court addressed two motions filed by defendant. The first was a request to supplement the record with a copy of

Guest's "Agreement on Detainers" with the State of Illinois, and a copy of his "Agreement on Detainers" with the State of California. In his second motion, the defendant requested that he be allowed to supplement the record with copies of his "Request for Disposition of Indictments in Illinois and California, and copies of Acceptance by those jurisdictions, obtained from Missouri State Penitentiary officials." Guest maintained that under the terms of these agreements, he should have been returned to Missouri after imposition of sentence in Illinois so that he could complete his Missouri prison term and that failure to comply violated his due process and equal protection rights. (*Guest*, 115 Ill. 2d at 113, 503 N.E.2d at 274.) The State objected to these motions, contending that they should be denied because defendant failed to demonstrate that these documents were part of the trial proceedings, and because they were extrinsic to matters raised on appeal. The court concluded that it was unnecessary for Guest to demonstrate that the agreements were part of the trial proceedings because the documents were "pertinent to an issue the defendant ha[d] raised both in the trial court and on appeal," and because they would "aid [the court] in [its] disposition of th[e] issue." (*Guest*, 115 Ill. 2d at 114, 503 N.E.2d at 274.) The court then allowed defendant's motions to supplement the record, examined the documents in question, and concluded that it had grave doubts whether provisions directing return of the prisoner to the sending State were intended to apply to a situation where the death penalty had been imposed by the receiving State. It further directed the Illinois Attorney General to communicate with Missouri and California authorities to "ascertain if those States wish[ed] to waive or enforce whatever rights they may have to the penal custody of the defendant." *Guest*, 115 Ill. 2d at 115, 503 N.E.2d at 275.

We are not persuaded that *Guest* is controlling authority for taking into consideration the police laboratory report in our review of the issues raised on appeal in this case. *Guest* can be readily distinguished in two important respects. First, the reviewing court specifically noted that the documents in question were pertinent to an issue that had been raised in the trial court as well as on appeal. In the instant case, no issue was ever raised at trial as to the amount of cocaine tested or the amount weighed. Moreover, the context in which the "supplemental documents" were considered in *Guest* differs significantly from the context in which the report would be considered here. In *Guest*, the court was presented with a situation where it had upheld a defendant's death sentence and would, in the usual course, be expected to either set a date for his execution or stay that execution

for stated reasons. There were, however, agreements in force, involving foreign jurisdictions, which directed the return of the defendant to serve out prison terms in those jurisdictions. These documents could not be ignored and were essential to the procedural disposition of the case. Here, the laboratory report has been submitted in support of issues going directly to the guilt or innocence of defendant, *i.e.*, to whether he was proved guilty beyond a reasonable doubt of specific charges and whether the sentences imposed must be reduced.

■■ While *Guest* is distinguishable, we find the reasoning of this court in *People v. Carroll* (1977), 49 Ill. App. 3d 387, 364 N.E.2d 408, cited by the State, to be controlling. The defendants in *Carroll*, appealing their rape convictions, contended that they were penalized for electing a jury trial because their codefendants, who pleaded guilty, received lighter sentences. This court granted leave for defendants to file a supplemental record consisting of certified copies of the codefendants' indictments and transcript pages from the circuit court proceedings involving the codefendants. The State then filed a motion to strike the supplemental record, asserting that none of the documents were made part of the record before the trial judge and that the additional material was improper and irrelevant. As in *Guest*, the defendants relied upon Supreme Court Rule 329. Concluding that the supplemental record must be stricken, this court stated:

> "In our opinion, [Supreme Court Rule 329] applies to supplementation of the record before this court with additional portions of the record *which were before the trial court*. To hold otherwise would transmute the rule into an authorization for trial de novo in the reviewing court." (Emphasis added.) (*Carroll*, 49 Ill. App. 3d at 396, 364 N.E.2d at 415.)

We likewise believe that our consideration of the police laboratory report, for the first time on appellate review of defendant's case, would amount to a trial *de novo* on an essential element of the charges relating to the cocaine. We further note that defendant was in possession of this document in ample time to place it in evidence before the trier of fact, but chose not to do so. We therefore grant the State's motion to strike the supplemental record. Accordingly, we will also grant the State's motion to strike that part of defendant's reply brief which suggests that we consider the supplemental record either in the context of an ineffective assistance of counsel claim, or as plain error. The State correctly observes that the supreme court rule it cites in support of this motion has been applied to strike, as waived, a constitutional issue raised for the first time in a reply brief. (107 Ill. 2d R. 341(e)(7); *In re Liquidations of Reserve Insurance Co.* (1988), 122 Ill.

2d 555, 567-68, 524 N.E.2d 538, 544.) Moreover, irrespective of the State's waiver argument, in light of the fact that we have stricken the laboratory report, defendant's contention that issues raised by that report should be considered on plain error or other grounds is no longer germane. We thus proceed to address the merits of the questions presented, looking solely to the trial court record.

■ The evidence before the circuit court, as trier of fact, consisted of Officer Rogers' testimony, the stipulated testimony of police chemist Somerville, and defendant's testimony. As a reviewing court, we must examine that evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472.) Where inconsistencies and conflicts exist in the evidence, the trier of fact has the responsibility of weighing the credibility of the witnesses and resolving these conflicts and inconsistencies. (*People v. Green* (1988), 179 Ill. App. 3d 1, 17, 535 N.E.2d 413, 423.) In a bench trial, this responsibility rests with the trial court, and the reviewing court will not substitute its judgment for that of the trier of fact where the evidence is merely conflicting. *People v. Daniels* (1984), 129 Ill. App. 3d 894, 898, 473 N.E.2d 517, 520-21.

We first consider the evidence concerning the nature and weight of the materials recovered from the apartment. The parties stipulated "as to [Philip] Somerville's qualifications and expertise in the field of chemistry and forensic chemistry." They also stipulated that the plant material and white powder confiscated by Rogers were "inventoried by him under No. 360032 and sent down to the Chicago Police Department crime lab for analysis." Rogers had earlier testified to inventorying the materials under that number and had identified in open court the evidence envelope that he had signed and sealed, and the substances contained therein. The parties further stipulated to the testimony of Philip Somerville that "[o]n January the 27th, 1987, he had occasion to perform a series of chemical analyses and observations upon the items which were confiscated by Officer Rogers in this case." Somerville further testified that he weighed the "two plastic bags containing crush[ed] green plant material" and "found that they weighed 88.67 grams." It was further stipulated that "in his opinion after performing the tests and analyses on them that *** the crush[ed] green plant was in fact cannabis." With regard to the "two plastic bags each containing fifty plastic packets of white powder plus two additional plastic packages of white powder, a total of one hundred and two packets," Somerville's testimony was that "he weighed

all the white powder and found that it weighed in total 48.7 grams." He also "performed a series of chemical analyses on the white powder and found that it was in fact cocaine."

■■ ■ Whether an entire substance contains a controlled substance is a question of fact. (*People v. Yosell* (1977), 53 Ill. App. 3d 289, 293, 368 N.E.2d 735, 738.) In the instant case, the trial court found that the entire 48.7 grams of white powdery substance were in fact cocaine, based on the stipulated testimony of an expert that he performed a series of chemical analyses and observations on "the white powder," which was contained in 102 plastic packets, and that "all the white powder," having been weighed, weighed 48.7 grams. Defendant correctly states that where there is a lesser included offense for possessing a smaller amount of a controlled substance, the weight of the substance containing a drug is an essential element of a possession charge, and that the "weight of the substance *containing the drug* must therefore be proved beyond a reasonable doubt." (Emphasis added.) (*People v. Hill* (1988), 169 Ill. App. 3d 901, 911, 524 N.E.2d 604, 611.) The law in Illinois is that a chemist need only test random samples in order to be qualified to render an opinion as to the makeup of the entire substance before him; however, this rule of reason and practicality is not without limitation. (*People v. Kaludis* (1986), 146 Ill. App. 3d 888, 894, 497 N.E.2d 360, 364.) Illinois appellate decisions, including those of this court, have held that where separate bags or containers of suspected drugs are seized, a sample from each bag or container must be conclusively tested to prove that it contains a controlled substance. (See *Hill*, 169 Ill. App. 3d at 911, 524 N.E.2d at 611 (and cases cited therein).) Defendants' convictions have been reduced where experts have testified that they subjected fewer than all of the bags or containers weighed to a reliable and conclusive test for the presence of a particular substance. See, *e.g., People v. Ayala* (1981), 96 Ill. App. 3d 880, 422 N.E.2d 127 (conviction reduced where expert subjected contents of only one bag, out of two, to spectrophotometer test for heroin, but testified that, in his opinion, both bags contained heroin); *People v. Games* (1981), 94 Ill. App. 3d 130, 418 N.E.2d 520 (where expert testified that her chemical analysis included tests on a portion of the contents of one bag, out of two bags suspected of containing cannabis, and then stated that the "material tested" contained cannabis, but expressed no opinion as to the whole, except for its weight, defendant's conviction reduced, based on contents of the one bag chemically tested); and *People v. Hill* (1988), 169 Ill. App. 3d 901, 524 N.E.2d 604 (where expert testified that conclusive test was performed on only 21.93 grams of suspect powder, State

did not prove beyond reasonable doubt that over 30 grams of the seized substance in fact contained cocaine).

The question here is whether the State presented sufficient evidence proving beyond a reasonable doubt that all of the white powdery substance recovered by Officer Rogers contained cocaine and that its total weight was 30 or more grams. We observe, initially, that Somerville did not testify to having analyzed some part of the white powder, or to having tested some or all of the packets in only one of the two bags. His testimony was that he tested "the white powder," which he had described as consisting of "a total of 102 packets." Moreover, in the context of the entire record, it is apparent that the intention of the agreement between the parties could only have been to stipulate to undisputed and unrebutted expert testimony that the entire amount of the green plant material confiscated (*i.e.*, 88.67 grams) was in fact cannabis and that the entire amount of the white powder confiscated (*i.e.*, 48.7 grams) was in fact cocaine. In effect, the result of the parties' agreement to present the chemist's testimony by stipulation, in such a brief and summary fashion, was essentially to remove from the case any issue of the expert's qualifications, the chain of custody, or the weight and chemical composition of the suspect materials.

■ Defendant contends that the parties only agreed that "if called to testify," Somerville would have stated what was read into the record, and that those statements, standing alone, would not suffice to prove him guilty of possessing a Class X amount of cocaine under the standard enunciated in *Hill* and other cases. However, in light of the entire record, we decline to subject Somerville's statement that "the white powder" was in fact cocaine, to further scrutiny. First, we do not believe that the State reasonably would have agreed to Somerville's stipulated testimony, thereby foregoing the opportunity to place the chemist on the witness stand, where he could have described in detail the number and type of tests performed on individual packets, were not the stipulation intended, in part, to eliminate the need for defending his testimony against a challenge to its sufficiency. Furthermore, we can only assume that defendant's trial counsel, having received notice during discovery, prior to trial, that Somerville was a potential State's witness, and having also received a copy of the laboratory report, decided to forego the opportunity to cross-examine the expert and to submit the report into evidence, in order to focus on other theories and aspects of the defense. Throughout the course of the trial, no question was raised concerning the evidence presented by Somerville or its sufficiency to support any element of the charged of-

fenses. Nor did the defense offer any additional testimony or evidence to contradict Somerville's statements. In his argument for a directed finding of not guilty at the close of State's evidence, and in his closing argument, defense counsel focused almost entirely on the issue of Williams' constructive possession of the drugs. Defendant's written motion for a new trial, while containing the boilerplate language that the prosecution failed to prove his guilt beyond a reasonable doubt and to prove every material allegation in the indictment beyond a reasonable doubt, addressed with specificity only the constructive possession issue. Outside of Somerville's stipulated testimony, the weight and composition of the drugs are nowhere discussed. For all of the above reasons, regardless of whether the issue may be considered waived on appeal, it is meritless in light of the record. We hold that the State presented evidence sufficient for a rational trier of fact to conclude that defendant possessed a Class X amount of cocaine beyond a reasonable doubt.

Defendant next contends that his cocaine and marijuana convictions must be modified because there was insufficient proof of an intent to deliver these drugs. Considering all of the evidence in the light most favorable to the prosecution, we must disagree. Defendant was convicted of knowing possession with intent to deliver more than 30 grams but not more than 500 grams of a substance containing cannabis, and with knowing possession with intent to deliver 30 or more grams of a substance containing cocaine. The first two elements, knowledge and possession, were addressed by the trial judge. He pointed to testimony that defendant had stated that the apartment was his. He further noted that, while the apartment was not the sort where people would live on an ongoing basis, controlled substances were kept there. The trial court also based its guilty finding on testimony that Williams had a house key to this apartment and that he opened the door, stating that both facts were consistent with defendant's control of the premises.

■■ ■ The governing principles relating to possession and knowledge have been well summarized by this court as follows:

> "Proof of the crime of unlawful possession of controlled substances requires that the State establish that the accused had knowledge of the presence of the narcotics and that the narcotics were within his immediate and exclusive control. [Citations.] Because knowledge is seldom susceptible of direct proof, it may be proved by evidence of acts, declarations, or conduct from which it is reasonable to infer that the accused knew of the existence of the narcotics at the place they were found. [Citation.]

Moreover, actual physical possession need not be demonstrated in order to sustain such conviction if constructive possession can be inferred from the facts. [Citations.] Constructive possession has been defined as 'that which exists without actual personal present dominion over a chattel, but with an intent and capability to maintain control and dominion.' [Citation.]" (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 291-92, 438 N.E.2d 1282, 1292-93.)

In defendant's case, the elements of knowledge and possession were sufficiently established by the testimony of Officer Rogers. Rogers stated that defendant, upon request, retrieved from his pants pocket working keys to the front steel door and burglar gates of a sparsely furnished apartment, with blackened windows, which had a hole in its utility closet through which the first-floor apartment was visible. Rogers twice testified that defendant told him that the second-floor apartment was "his" or "his place." Police officers first encountered defendant in the kitchen of this apartment, where a large plastic bag, containing 102 individually wrapped packets of cocaine, was found in plain view on a stove, along with two wrapped marijuana sticks, both of which were "right next to" an O'Haus triple-beam scale. Williams testified that, while he recognized these materials as cocaine and marijuana when police brought them to his attention, because he knew what these drugs looked like, he had not previously known of their presence because he had not searched the apartment, where he was merely waiting for a friend. He further stated that he did not open the front door for the other officers, and did not know how they gained entry to the apartment. However, the trier of fact was not required to accept defendant's account, and it was the province of the trial judge to determine the witnesses' credibility. The court resolved the inconsistency between Rogers' testimony and that of defendant in favor of the police officer.

■ Furthermore, with regard to the element of intent, the quantity of cocaine alone, prepackaged in 102 separate packets and sitting next to the scale, was circumstantial evidence from which the trier of fact could properly conclude that it was not intended for personal use but was possessed with intent to deliver. (See *People v. Tovar* (1988), 169 Ill. App. 3d 986, 994, 523 N.E.2d 1178, 1183; *People v. Stamps* (1982), 108 Ill. App. 3d 280, 295, 438 N.E.2d 1282, 1295.) The blackened windows, the lack of significant furnishings and a refrigerator, and the hole in the closet floor were also circumstantial evidence that the drugs were not present solely for the personal use of the three individuals found on the premises. While the amount of marijuana re-

covered may have been closer to an amount conceivably kept by three persons for their own personal use, its proximity to the large quantity of cocaine and the scale also raises a reasonable inference that it was in defendant's possession with intent to deliver. We acknowledge that had other factors, such as large quantities of cash, or weapons, been found on the premises, they might have added to the weight of the State's evidence. (See, *e.g., People v. Trask* (1988), 167 Ill. App. 3d 694, 521 N.E.2d 1222.) However, the absence of such additional factors does not mean that the State has not met its burden of proof. We therefore find that the State presented sufficient, if not overwhelming, evidence of defendant's guilt on the charges of possession with intent to deliver the two drugs, and that a rational trier of fact could have found him guilty of these charges beyond a reasonable doubt.

In light of the foregoing, we will not disturb the trial court's judgment in this case. Notwithstanding, we wish to point out that defendant's claimed error relating to the stipulated testimony of the chemist, based on a document not in evidence in the trial record, may be more amenable to review in the context of a post-conviction petition, although it could not be addressed on direct review. (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*; see *Perry v. Fairman* (7th Cir. 1983), 702 F.2d 119; *People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973; and *People v. Jones* (1988), 168 Ill. App. 3d 925, 522 N.E.2d 1325.) We of course offer no opinion as to the likelihood of defendant's success on any claim in other proceedings. For the above-stated reasons, based on the record before us, we affirm defendant's convictions and sentences entered by the circuit court of Cook County.

Affirmed.

LORENZ and MURRAY, JJ., concur.