THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JESSE SHEPHERD, Defendant-Appellant.

First District (4th Division)   No. 1—91—0546

Opinion filed March 11, 1993.

James R. Epstein, of Epstein, Zaideman & Esrig, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and John L. Fioti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendant, Jesse Shepherd, was convicted of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)) and was sentenced to a 20-year term in the Illinois Department of Corrections.

On appeal, defendant contends (1) he was denied effective assistance of counsel in violation of the sixth and fourteenth amendments; (2) defense counsel was under an impermissible conflict of interest; and (3) the State failed to prove him guilty beyond a reasonable doubt.

We affirm.

The following facts were adduced at trial. Earnest James testified that while in his home on May, 29, 1989, he observed the victim, Cleavon Dean, running into his backyard yelling that someone was shooting at him. He stated that Martez Shepherd was running behind Dean with his arm straight out and firing a weapon at him. After Martez fired four or five shots at Dean, he grabbed him and they began to "tussle." Dean subsequently slumped and fell onto a concrete slab. Martez then ran through James' yard, jumped over a fence, and fled down an alley.

Antoinette Washington, who lives in the house next to Earnest James, testified that she heard a couple of gunshots, looked out of her window and saw Dean lying facedown in the yard next door to her home. She also observed Martez running down an alley and then saw him riding in a car in front of her house. She identified defendant as the driver of that car.

Officer Carol Collins testified that she and her partner, police officer Francis Saglifa, received a dispatch regarding a vehicle wanted in a homicide investigation. The officers spotted the car and followed it for approximately four blocks. Officer Collins activated her lights and the car stopped. She instructed the occupants of the vehicle to open their doors and exit the vehicle. She testified that the two men who exited the vehicle were defendant and Martez. Officer Collins further stated that she looked in the glove compartment of the vehicle and found a .38-caliber automatic pistol.

Kimberly Cochran testified that on May 29, 1989, she, defendant, and Martez were sitting in front of her house having a conversation when Cleavon Dean and two other men came out of another house. Martez and Dean began to fight and defendant attempted to break up the fight. Martez then went to defendant's car in search of defend-

ant's shotgun. Defendant stopped Martez from obtaining the shotgun and they got into the car and left.

Detective William Marley testified that according to defendant's statements Trinell Ladd supplied defendant and Martez with two pistols—one a .38-caliber automatic which Ladd gave to defendant, and another which he gave to Martez. As defendant and Martez drove through the area, Martez saw the men he had fought with earlier and jumped out of the car. Defendant drove to the end of the block and exited the car carrying the .38-caliber automatic pistol. He fired one shot at the men. He then got in the car and drove around looking for Martez. Martez appeared, jumped through the window of the car, and told defendant: "I shot somebody." Defendant asked Martez if he killed anyone and Martez said he "didn't know." Defendant told Detective Marley that the .38-caliber automatic pistol he fired at the men was the one police recovered from his glove compartment.

Defendant denied the facts to which Detective Marley testified. He stated that he saw Martez get a gun from a friend. Defendant then took the gun from Martez and placed it in the glove compartment. While defendant spoke with Martez's friend, Martez left and ran through an alley. Defendant did not know Martez had a weapon. While defendant drove around the area searching for Martez, Martez jumped through the window of the car. Defendant then drove around the block and saw "a lot" of police cars. Later, when defendant learned of the shooting, he asked Martez whether he had shot somebody. Martez said he "didn't know."

Defendant stated that after the shooting, Martez put the .38-caliber gun that was in defendant's glove compartment to his head, and it appeared as if he was going to kill himself. Defendant told him to put the gun down and Martez put it back into the glove compartment. Defendant also stated that, contrary to police contentions, he never fired a shot.

Initially, both defendant and Martez were represented by the same counsel. On November 17, 1989, counsel limited his representation to defendant because he believed it necessary to call Martez as a witness at defendant's trial. Defendant's trial commenced on June 11, 1990, and the next day, he was found guilty of first degree murder. Martez subsequently pleaded guilty to the same offense.

On December 10, 1990, defendant's motion for a new trial was heard. Defendant preliminarily filed a motion for substitution of counsel from his trial counsel. The first witness called at the hearing was Earnest Warner, a firearms examiner for the Chicago police department. He stated that his specialty was the microscopic examination of

firearms to determine their origin. The court found him to be a firearms expert.

Warner examined the .38-caliber weapon found in defendant's glove compartment, two .22-caliber bullets taken from the victim's body, and a .38-caliber discharged cartridge case recovered at the scene. He testified that, contrary to the stipulation entered into by defense counsel, neither of the .22-caliber bullets was fired from the .38-caliber weapon found in defendant's glove compartment.

He also test-fired the .38-caliber gun and compared the test-fired cartridge case with the discharged cartridge case found at the scene. Based on the reproduction of the microscopic characteristics, Warner stated that the characteristics found on the test cartridge case were present on the discharged cartridge case. He concluded that both cartridges were fired from the .38-caliber weapon recovered from defendant's glove compartment.

After arguments on both sides, the trial court denied defendant's motion for a new trial and he was sentenced to 20 years in the Illinois Department of Corrections. Defendant appeals.

Initially, defendant contends he was denied effective assistance of counsel. In *People v. Albanese* (1984), 104 Ill. 2d 504, our supreme court adopted the standard promulgated by *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, which sets forth the requisite showing for an ineffective assistance of counsel assertion. First, defendant must establish that counsel's representation was so egregious that it fell below the "counsel" guaranteed by the sixth amendment. Second, defendant must demonstrate that counsel's errors prejudiced him, denying him a fair trial and casting doubt on the accuracy of the verdict. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

■■ Relative to this issue, defendant argues that trial counsel erred in failing to call Martez as a witness because Martez' testimony would have exculpated him. However, defendant has not shown trial counsel's performance to be so defective as to satisfy the first prong of *Strickland*. Defendant has also failed to demonstrate prejudice resulting from Martez's failure to testify. He simply postulates that Martez's testimony would have demonstrated his lack of involvement in the shooting and that trial counsel's decision not to call Martez as a witness was error.

The record does not reveal that the testimony of Martez would have exonerated defendant. Defendant was convicted of murder based on an accountability theory. Therefore, even if Martez had exculpated defendant from the actual shooting, his testimony would not have

erased defendant's accountability. We believe trial counsel's decision not to call Martez as a witness was not erroneous and certainly fails to constitute a deficiency of constitutional proportions as envisioned in *Strickland*. Further, even assuming inadequate representation, it is defendant's onus to plainly demonstrate that trial counsel's deficiency prejudiced him. (*People v. West* (1986), 142 Ill. App. 3d 876, 878; *People v. Rodriguez* (1983), 117 Ill. App. 3d 761, 764.) Defendant has established neither a deficiency nor resultant prejudice.

Secondly, relative to the ineffective assistance issue, defendant contends trial counsel's stipulation that the bullet recovered from the victim's body could have been fired from defendant's gun was error. Though this incorrect stipulation may constitute a deficiency, defendant has failed to fulfill the second component of *Strickland, i.e.,* prejudice resulting from the deficiency. The record evinces that the trial judge carefully enumerated the evidence used in his arrival at a guilty verdict and he clearly did not consider the incorrect firearms stipulation. The stipulation was therefore nonprejudicial and accordingly harmless.

Defendant also asserts other errors and omissions which he argues constituted ineffective assistance of counsel. We decline to conduct an individual review of each alleged error, as the record patently establishes the absence of a prejudicially tainted outcome resulting from any of his assertions.

. Defendant secondly argues that trial counsel's representation was obstructed by an impermissible conflict of interest. Defendant and Martez were initially represented by the same counsel, but this counsel withdrew from representing Martez six months before trial because he believed it necessary to call Martez as a witness at defendant's trial.

■ Defendant specifically posits a conflict of interest based on his trial counsel's functioning as a *de facto* representative for Martez even though his trial counsel withdrew from representing Martez. This conflict, defendant contends, influenced trial counsel not to call Martez as a witness and resultantly prejudiced him. Defendant, however, neither informed the court of this behavior, nor did he express dissatisfaction with trial counsel's representation. He also never requested a substitution of counsel.

"[I]f the trial court is not apprised of the potential conflict, then reversal of the conviction will only be had upon a showing that 'an actual conflict of interest adversely affected' counsel's performance." (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 18, quoting *Cuyler v. Sullivan* (1980), 446 U.S. 335, 350, 64 L. Ed. 2d 333, 348, 100 S. Ct. 1708,

1719.) There is no evidence that trial counsel labored under inconsistent obligations during trial nor is there an indication of a detrimental effect on defendant.

"[D]efendant must point to some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict." (*Spreitzer*, 123 Ill. 2d at 18.) Defendant's solely contended defect is trial counsel's failure to call Martez as a witness. However, we fail to see the nexus between the failure to call Martez and the alleged conflict of interest. Martez was entirely represented by alternate counsel who commenced his representation six months before trial. The record indicates a clear distinction between the representatives of defendant and Martez. This individual representation was also noted by the trial court. Trial counsel's decision not to call Martez was therefore not attributable to a conflict of interest as no conflict existed.

■■ Finally, defendant asserts that he was not found guilty beyond a reasonable doubt. The appropriate standard of review of this issue was established by *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781, and adopted by our supreme court in *People v. Young* (1989), 128 Ill. 2d 1. " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) (*Young*, 128 Ill. 2d at 49, quoting *Jackson*, 443 U.S. at 318-19, 61 L. Ed. 2d at 573-74, 99 S. Ct. at 2788-89.) A thorough perusal of the record supports the finding of defendant's guilt beyond a reasonable doubt.

For the aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

CAHILL and HOFFMAN, JJ., concur.